# IN THE UNITED STATES DISTRICT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| WESTFIELD INSURANCE GROUP, ) <br> ) <br> Plaintiff, ) <br> ) <br> Vs. ) <br> ) <br> Serve: ) <br> ) <br> ADKINS ELECTRIC, INC. ) <br> c/o Registered Agent Corporation ) <br>   Service Company ) <br> 2908 Poston Ave., ) <br> Nashville, TN 37203-1312 ) <br> ) <br> And ) <br> ) <br> ASHLAND HEIGHTS, L.P. ) <br> c/o Registered Agent John H. Roe, Jr. ) <br> 150 3rd Ave., South, Suite 1100 ) <br> Nashville, TN 37201-2037 ) <br> ) <br> And ) <br> ) <br> SUMMIT CONTRACTING GROUP, ) <br> INC., ) <br> c/o Registered Agent National Registered ) <br>   Agents, Inc. ) <br> 200 Montvue Road ) <br> Knoxville, TN 37919-5546 ) <br> ) <br>       Defendants. ) | No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now the Plaintiff, Westfield Insurance Group ("Westfield"), by and through counsel, and pursuant 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. Rule 57 and hereby brings

this action for Declaratory Judgment asserting that an actual controversy exists between the parties. Westfield, for cause of action, respectfully states the following:

## A. PARTIES, JURISDICTION AND VENUE

1. Westfield is an Ohio corporation with its principal place of business being in Westfield Center, Ohio. Westfield is an insurance company that issues commercial insurance policies and does business in the State of Tennessee.

2. Defendant, Adkins Electric, Inc. ("Adkins") is a Florida corporation that does business in the State of Tennessee, including the work and/or services that are material to this action. Adkins' principal place of business is located at 10477 New Kings Road, Jacksonville, FL 32219 and can be served through its registered agent, Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203-1312.

3. Defendant, Summit Contracting Group, Inc. ("Summit") is a Florida corporation that does business in the State of Tennessee, including the work and/or services that are material to this action. Summit's principal place of business is located at 1000 Riverside Ave., Suite 800, Jacksonville, TL 32204-4101 and can be served through its registered agent, National Registered Agents, Inc., 200 Montvue Road, Knoxville, TN 37919-5546.

4. Defendant, Ashland Heights, L.P. ("Ashland") is a Tennessee limited partnership that does business in the State of Tennessee, including owning and operating on the property that are material to this action. Ashland's principal place of business is located at 1164 Vantage Pointe, Ashland City, TN 37015 and can be served through its registered agent, John H. Roe, Jr., 150 3rd Ave., South, Suite 1100, Nashville, TN 37201-2037.

5. This Court has subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57.

6. An actual justiciable controversy exists between the parties, primarily between Westfield and Adkins, that is within the meaning of 28 U.S.C. § 2201 regarding whether Westfield has a duty to defend or indemnify Adkins under the applicable insurance policy with respect to the claims asserted in the lawsuits that are more particularly described below.

7. That this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1331(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the suit is between citizens of different states.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district and more importantly, the property where the work was performed by the various parties or owned by a party is located in this judicial district.

## B. FACTS AND UNDERLYING LAWSUITS

9. Ashland is the owner of the subject property which is located in Ashland City, Cheatham County, Tennessee.

10. In September 2013, Ashland entered into a contract with Summit to construct an assisted living facility for Ashland. Related thereto, Summit entered into a subcontract agreement with Adkins for the electrical and fire alarm system of the assisted living facility.

11. Upon information and belief, the project was completed in early 2015.

12. Upon information and belief, in January 2016, Summit sued Ashland regarding amounts still owed Summit from the project and the parties' contract. The lawsuit was filed in the Chancery Court for Cheatham County, Tennessee, Docket No. 16747. On or about July 19, 2016, Ashland filed an Amended Answer and Counterclaim to Summit's First Amended Complaint.

3

13. On or about August 15, 2016, Summit filed an Answer to Ashland's Counterclaim and filed a Third-Party Complaint against Adkins. (collectively referred to as "Summit's TPC") and attached hereto as Exhibit "A."

14. Upon information and belief, in May 2018, Ashland filed a separate lawsuit in the Chancery Court for Cheatham County, Tennessee against various subcontractors (including Adkins) and others related to the construction of their assisted living facility (except Summit). Subsequently, on or about June 4, 2018, Ashland filed an Amended Complaint regarding the same in Chancery Court for Cheatham County, Tennessee, Docket No. 17528 (hereinafter referred to as "Ashland's Amended Complaint" and attached hereto as Exhibit "B.")

### 1. Summit's Third-Party Complaint

15. In Summit's TPC, it alleged that a subcontract agreement was entered into in May 2013 between Summit and Adkins which required Adkins to perform all electrical work for Ashland's property and the installation of the required fire alarm system.

16. In Summit's TPC, it asserted that Ashland began experiencing problems with the fire alarm system as installed by Adkins. The problems allegedly began during the summer of 2015 and continued.

17. Summit claimed that Ashland deemed the fire alarm system as being defective; therefore, Summit sent formal notice to Adkins to investigate and/or repair the alleged problems with the fire alarm system.

18. On August 8, 2016, Summit alleged that it sent a demand letter to Adkins formally requesting that Ashland "indemnify, hold harmless and defend Summit" regarding Ashland's allegations "as it relates to the work performed by Adkins, including but not limited to the [fire alarm] System."

19. In Summit's TPC, its sole cause of action was related to indemnity, defense and hold harmless regarding Ashland's allegations related to Adkins' scope of work, including the fire alarm system. Specifically, Summit cited "legal theories of breach of contract and contractual and common law indemnity."

## 2. Ashland's Amended Complaint

20. In Ashland's Amended Complaint, Ashland asserted that its assisted living facility opened in mid-2015. Since its opening, Ashland claimed that the facility had over 150 false fire alarms. Ashland asserted that it made numerous demands to Summit to cure "the Defective Installation of Fire Alarm System."

21. Specifically, Ashland asserted that "the fire alarm system in [t]he building is defective" and "the wiring of [t]he fire alarm system is defective."

22. Ashland sought damages "to remediate" the defective fire alarm system and defective wiring.

## C. WESTFIELD'S POLICY

23. Westfield issued an insurance policy to Adkins, Policy No. CM 3 627 492 with an effective policy period of June 30, 2014 to June 30, 2015 (hereinafter the "Policy").

24. A copy of the Policy is provided as Exhibit C attached hereto.

25. The Commercial General Liability ("CGL") coverage part of the Policy contained the following insuring agreement:

**SECTION I – COVERAGES** (CG 00 01 04 13)

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILTY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this

insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory,"

***

The CGL and Policy provided the following exclusions for the CGL:

**2. Exclusions**

This insurance does not apply to:

***

    b. **Contractual Liability**

        "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

        This exclusion does not apply to liability for damages:

        (1) That the insured would have in the absence of the contract or agreement; or

        (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

            a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

            b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this instance applies are alleged.

***

6

j.  **Damage to Property**

   "Property damage" to:

   ***

   (5) That particular part of the real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

   (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

   ***

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

l.  **Damage to Your Work**

   "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

   This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  **Damage to Impaired Property or Property Not Physically Injured**

   "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work," or

   (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.  **Recall Of Products, Work Or Impaired Property**

   Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal recall, inspection, repair, replacement, adjustment, removal or disposal of:

7

(1) "Your product,"

(2) "Your work," or

(3) "Impaired property,"

    if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

                            ***

The Policy provided the following definitions for the CGL:

**SECTION V – DEFINITIONS**

                            ***

8. "Impaired property" means tangible property, other than "your product" of "your work," that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or though to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

                            ***

    f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

                            ***

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

                            ***

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. all such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physical injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   \*\*\*

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

   \*\*\*

22. "Your work."

   a. Means:

      (1) work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      (2) The providing of or failure to provide warnings or instructions.

   \*\*\*

**AMENDMENT OF INSURED CONTRACT DEFINITION** (CG 24 26 04 13)

This endorsement modified insurance provided under the following:

   COMMERCIAL GENERAL LIABILITY COVERAGE PART
   PRODUCTS/COMPLETED OPERATIONS LIABILTY COVERAGE PART

The definition of "insured contract" in the Definitions section is replaced by the following:

   "Insured contract" means:

      f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a

municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

\*\*\*

**COMMERCIAL GENERAL LIABILTY CONTRACTORS ENDORSEMENT** (CG 7137 11 12)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Coverage afforded under this expanded coverage endorsement does not apply to any person or organization covered as an additional insured on any other endorsement now or hereafter attached to this Coverage Form.

\*\*\*

Under SECTION V – DEFINITIONS, item 9, Is deleted and replaced with the following:

9. "Insured Contract" means:

\*\*\*

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

\*\*\*

26. Soon after receiving notice of the claim, Westfield sent a brief Reservation of Rights letter to Adkins in June 2017. After performing additional investigation, a subsequent, more detailed, Reservation of Rights letter was sent to Adkins in April 2018.

## D. GROUNDS FOR DECLARATORY JUDGMENT

27. Westfield incorporates by reference Paragraphs 1-26 above as if fully stated herein.

28. The Policy was issued to and delivered to Adkins in the State of Florida. Both Florida and Tennessee followed the *lex loci contractus* doctrine. This doctrine sets forth that the law of the state where the contract was made and entered should apply. Therefore, Florida law applies to the interpretation of the Policy regarding this Declaratory Judgment.

29. The underlying lawsuits, Summit's TPC and Ashland's Amended Complaint, do not allege an "occurrence" or "property damage" caused by an "occurrence" as those terms are defined in the Policy and/or Florida law.

30. To the extent there is an "occurrence" in the underlying lawsuits, there are no allegations regarding "property damage" as stated above. Florida law has consistently held that CGL policies do not cover claims to repair or replace defective work. There is no coverage for the cost of repairing defective work or crediting its value to a running account because neither, in and of itself, is "property damage."

30. The allegations contained in the underlying lawsuits are related to the cost to repair defective work (or a credit against its account) and there are no allegations for the cost to repair resulting damages and/or damages caused by any defective work. Therefore, there is no duty to defend or indemnify Adkins regarding Summit's TPC or Ashland's Amended Complaint.

31. In addition, any claim for damages related to any breach of contract claim is precluded by the contractual liability exclusion. Economic damages are not recoverable under a CGL policy with a contractual liability exclusion pursuant to Florida law.

32. In the alternative, if the Court finds that "property damage" was sufficiently alleged in either Summit's TPC and/or Ashland's Amended Complaint, the following exclusions apply

11

excluding coverage: Damage To Impaired Property or Property Not Physically Injured, Damage To Your Work.

33. There is no coverage under the Policy for Adkins regarding Summit's TPC and/or Ashland's Amended Complaint and therefore, Westfield owes no duty to defend or indemnify Adkins in either matter.

34. An actual controversy exists between Westfield, on the one hand, and Adkins (and all interested defendants), on the other hand, and by the terms and provisions of Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

**WHEREFORE, PREMISES CONSIDERED**, plaintiff, Westfield Insurance Group, respectfully requests this Honorable Court to declare and adjudge the controversy as follows:

(1) Declare that Westfield owes no duty to defend Adkins Electric, Inc. or any party in the underlying lawsuits, including Summit's TPC and Ashland's Amended Complaint.

(2) Declare that Westfield has no duty to indemnify Adkins Electric, Inc. or any party for any loss or damages arising from the underlying lawsuits, including Summit's TPC and Ashland's Amended Complaint.

(3) Grant any other relief that this Honorable Court deems just and equitable under the circumstances, including the award of costs.

WESTFIELD INSURANCE GROUP

By: _____
Jon M. Cope (BPR #20031)

STOKES, WILLIAMS, SHARP, COPE & MANN
P.O. Box 2644
Knoxville, TN 37901
865/544-3833
Attorney for Westfield Insurance Group

12

Case 3:18-cv-01265   Document 1   Filed 11/08/18   Page 12 of 12 PageID #: 12